UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00339-RJC

| | |
|---|---|
| CHERYL D. DAVIS, *on behalf of herself and as Personal Representative of the Estate of* Laiqunada Shoniricco Davis,<br><br>        **Plaintiff,**<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        **Defendant.** | **ORDER** |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 14, 18). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I.     BACKGROUND

Plaintiff Cheryl Davis ("Ms. Davis") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her late son Laiqunada Davis' ("Mr. Davis") social security claim. Mr. Davis filed an application for disability insurance benefits on April 16, 2018, with an alleged onset date of October 1, 2017. (Tr.[1] 20).

In denying Mr. Davis' social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 20–34). At step one, the ALJ found that Mr. Davis had not engaged in substantial gainful activity since the alleged onset date. (Tr. 22). At step two, the ALJ found that Mr. Davis

---

[1] Citations to "Tr." throughout the order refer to the administrative record at DEs 12 and 17.

had the following combination of severe impairments: post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), and depressive disorder. (*Id.*). The ALJ also found that Mr. Davis had the following combination of non-severe impairments: seizures, drug addiction, and alcoholism. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (Tr. 23). Before moving to step four, the ALJ found that Mr. Davis had the residual functional capacity ("RFC") to perform medium work as explained below:

> [T]he claimant has the residual functional capacity to perform "medium" work as defined in 20 CFR 404.1567(c) except he can have no concentrated exposure to hazards such as unprotected heights or open machinery; perform unskilled work of routine, repetitive nature in two-hour segments at a non-production pace meaning non-automated/non-conveyor pacing in a stable work setting; no public contact; occasional supervisor and co-worker contact but the work itself cannot require teamwork for task completion; and no requirement for conflict resolution or crisis management.

(Tr. 25). At step four, the ALJ found that Mr. Davis could not perform any past relevant work[2], but found at step five that Mr. Davis could perform jobs that existed in significant numbers in the national economy, such as a change house attendant (DOT# 358.687-010), cleaner II (DOT# 919.687-014), and industrial cleaner (DOT# 381.687-018). (Tr. 32–33).

The ALJ issued a decision finding that Mr. Davis was not disabled on February 14, 2020, and the Appeals Council denied his request for review on May 11, 2020. Mr. Davis passed away on April 8, 2020. After exhausting his administrative remedies, Ms. Davis, on behalf of Mr. Davis' estate, brought the instant action for review of Defendant's decision denying Mr. Davis' application for disability insurance benefits under Title II of the Social Security Act. (DE 1).

---

[2] Mr. Davis was previously a picker at Amazon after working as a supply clerk in the Army for four years. (Tr. 25).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is

3

"substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Plaintiff raises five challenges: (1) the ALJ improperly evaluated Mr. Davis' symptoms; (2) the ALJ improperly assessed the RFC and failed to explain his findings; (3) the ALJ improperly evaluated the opinion evidence; (4) the ALJ improperly evaluated Mr. Davis' VA disability rating; and (5) the ALJ failed to resolve apparent conflicts between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT").

#### A. Evaluation of Mr. Davis' Symptoms

Relying on *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017), Plaintiff asserts the ALJ applied an incorrect legal standard and improperly relied on objective medical evidence when evaluating Mr. Davis' symptoms to determine whether he was disabled. (DE 15 at 4–7). Defendant contends that Plaintiff mischaracterizes the legal standard and that the ALJ properly evaluated Mr. Davis' symptoms in light of the entire record, including objective medical evidence. (DE 19 at 5–10).

An ALJ must use a two-step framework to evaluate a claimant's symptoms. 20 C.F.R § 404.1529; SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The ALJ must first determine whether there is objective evidence of a "medically determinable impairment," that could reasonably be expected to produce the alleged symptoms. 20 C.F.R § 404.1529(b); SSR 16-3p, 2016 WL 1119029 at *3. Second, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms in order to determine how those symptoms affect the claimant's ability to maintain substantial gainful employment and whether they are disabled. 20 C.F.R § 404.1529(c); SSR 16-3p, 2016 WL 1119029 at *4. Here, the ALJ followed this standard. The ALJ specifically

4

described the two-step process and cited to 20 C.F.R. 404.1529 and SSR 16-3p. (Tr. 25). After determining that Mr. Davis had medically determinable impairments that could reasonably be expected to produce the alleged symptoms, the ALJ analyzed the intensity, persistence, and limiting effects of Mr. Davis' symptoms to determine the extent to which they limited Mr. Davis' work-related activities. In particular, the ALJ described Mr. Davis' symptoms, listed the medical evidence and opinions and other evidence including Ms. Davis' observations, and then explained that Mr. Davis' "symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 25–32). The ALJ then described the inconsistencies. This follows the standard.

Plaintiff next argues that the ALJ ignored Fourth Circuit precedent in *Lewis* by disregarding Mr. Davis' subjective complaints due to a lack of objective evidence. (DE 15 at 5–7). While *Lewis* held that "subjective evidence of [symptom] intensity cannot be discounted solely based on objective medical findings," 858 F.3d at 866, the Fourth Circuit has long recognized that objective medical evidence is an important factor when evaluating a claimant's symptoms in a manner that is consistent with the regulations. *See* 20 C.F.R. §§ 404.1529(c)(2) (objective medical evidence is a "useful indicator" to assist in making reasonable conclusions about intensity and persistence of symptoms and the effect of those symptoms on the ability to work); *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996) (characterizing objective medical evidence as "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work."). Unlike in *Lewis* where the ALJ determined that objective medical evidence was required to substantiate the claimant's pain symptoms, 858 F.3d at 866, here the ALJ did not discount Mr. Davis' symptoms because of a lack of objective medical evidence. Instead, after looking at the entire record, the ALJ determined that the intensity, persistence, and limiting effects of Mr. Davis'

5

symptoms "are not entirely consistent with the medical evidence and other evidence in the record." Tr. 26).

Plaintiff also disagrees with the ALJ's conclusion that Mr. Davis' symptoms are not entirely consistent with the record evidence. To succeed, Plaintiff must show that the ALJ's decision regarding Mr. Davis' symptoms lacks substantial evidence. This means Plaintiff must show that the ALJ failed to present sufficient evidence to clear the low bar of the "more than a mere scintilla" threshold, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1156 (2019), or that the ALJ failed to "build an accurate logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

As listed in the ALJ's decision, Mr. Davis' testified that he suffers from paranoia, auditory and visual hallucinations four times a week, depression, and anxiety. Mr. Davis further testified that he lost his job at Amazon due to habitual tardiness because he had difficulty sleeping; that he has lived with his mother since he was discharged from the military in June 2016; that his mother performs household chores and watches him step into and out of the shower due to falls; that he is unable to prepare meals; and that he last went to the gym in 2016. (Tr. 25–26, 292). Mr. Davis' mother testified that Mr. Davis lives with her; that Mr. Davis has anxiety, depression, difficulty sleeping, and paranoia; that Mr. Davis struggles with alcohol and drug use and drank while working at Amazon; and that Mr. Davis takes out the trash but is unable to cook. (Tr. 26).

The ALJ then listed medical evidence and noted the inconsistencies between Mr. Davis' testimony and the medical evidence. For example, Mr. Davis regularly denied hallucinations in medical treatment notes. (Tr. 26 (psychosocial assessment with Dr. Edmonds in July 2017), Tr. 26 (psychiatric appointment with Dr. Pechal in October 2017 and February 2018), Tr. 29 (evaluation by Dr. Ritterspach in March 2019)). Mr. Davis also repeatedly told medical

6

Case 3:20-cv-00339-RJC   Document 20   Filed 03/07/22   Page 6 of 17

professionals that he lived alone or with roommates which the ALJ found was "inconsistent with his testimony." (Tr. 27 (Mr. Davis told Dr. Pechal in February 2018 his lease was expiring and he was looking for a new place to live), Tr. 27 (VA notes from March 2018 reveal Mr. Davis was living with a roommate), Tr. 29 (VA notes from September 2019 state that Mr. Davis lived by himself), Tr. 30 (Dr. Goots, a state agency psychologist, noted that in May 2018 Mr. Davis lived alone in an apartment, drove, handled finances, and performed household chores)). The ALJ also noted that Mr. Davis told his primary care provider in April 2018 that he worked out at the gym four times a week which the ALJ found was "inconsistent with his testimony" that he last went to the gym in 2016. (Tr. 28). This evidence is more than a scintilla and the ALJ provided a logical bridge from the evidence to his conclusions such that his analysis of Mr. Davis' symptoms is supported by substantial evidence.

Plaintiff also asserts that Mr. Davis' five hospitalizations are further evidence of his symptoms and that the ALJ's findings in light of the hospitalizations cannot be supported by substantial evidence. This is without merit as Mr. Davis recovered from the hospitalizations[3] and, to the extent the hospitalizations were caused by Mr. Davis' substance abuse, 42 U.S.C. § 423(d)(2)(C) precludes a disability finding if drug and alcohol abuse is a contributing factor.

**B.   RFC Finding**

Plaintiff broadly asserts that the ALJ failed to adequately account for Mr. Davis' limitations

---

[3] Mr. Davis was hospitalized (1) from June 4 to July 9 of 2018 as part of a VA substance abuse program, (DE 15 at 6; Tr. 28); (2) from September 11-20 of 2018 for a traumatic brain injury resulting from a fall that occurred at a time when Mr. Davis admitted to abusing alcohol and cough medicine where Mr. Davis was found unconscious with a VA substance abuse card in his pocket, (DE 15 at 7; Tr. 679, 682); (3) on October 30 to November 1 of 2018 for seizures due to his recent TBI which were thereafter controlled with treatment, (DE 15 at 7; Tr. 47); (4) from April 11-17 of 2019 for cold medicine abuse, (DE 15 at 7); and (5) from September 25 to October 2 of 2019 by a VA involuntary commitment order after he failed to take medications and was abusing alcohol, (DE 15 at 7; Tr. 29).

Notably, Mr. Davis cited alcohol and drug abuse, including cough and pain medication abuse, as his most significant problems to medical providers. (Tr. 26, 27). Mr. Davis also told medical professionals that he thought his history of hallucinations may be related to his abuse of cough syrup. (Tr. 27).

and explain the RFC finding. In particular, Plaintiff asserts that the (1) ALJ applied the incorrect regulatory framework by not first engaging in a function-by-function analysis, (2) that the ALJ failed to define "non-production pace", and (3) that the ALJ failed to include all Mr. Davis' limitations.

### i. Regulatory Framework

Relying on *Dowling v. Commissioner*, 986 F.3d 377 (4th Cir. 2021), Plaintiff argues that the ALJ failed to follow the regulatory framework. In *Dowling*, the Fourth Circuit noted that the ALJ failed to cite to 20 C.F.R. § 416.945 or SSR 96-8p when evaluating the RFC and the ALJ's reliance on SSRs 96-7p and 16-3p was in error. *Dowling*, 986 F.3d at 387. The Fourth Circuit also found that the ALJ failed to discuss relevant and contested functions related to Dowling's ability to work when determining the RFC where there was considerable evidence demonstrating symptoms and limitations affecting the omitted functions. *Id.* at 387–89 (ALJ failed to discuss the functional limitation of prolonged sitting when claimant suffered from anal fissures). Although the Fourth Circuit found that the ALJ's failures in *Dowling* warranted remand, the *Dowling* court still acknowledged there is no per se rule requiring remand any time the function-by-function analysis is deficient or even absent altogether. *Id.* at 387.

Here, the ALJ, like the ALJ in the *Dowling* case, did not cite to 20 C.F.R. § 416.945 or SSR 96-8p. However, unlike the ALJ in the *Dowling* case, the ALJ here went through a function-by-function analysis. For example, the ALJ made the following function-by-function analyses: limited Mr. Davis to unskilled, routine, and repetitive work because he had cognitive difficulties after the TBI, (Tr. 48, 55); limited Mr. Davis to working in two-hour segments at a non-production pace in a stable work setting because he had cognitive, mood, sleeping, and concentration difficulties, (Tr. 49, 56); limited Mr. Davis to tasks that do not involve interaction with the public

8

or teamwork because he had paranoia and was socially withdrawn, (Tr. 48, 56–57); limited Mr. Davis to occasional interaction with coworker's and supervisors because his ability to relate to others was impaired, (Tr. 48, 55); limited Mr. Davis to work with no requirement for conflict resolution or crisis management because his ability to tolerate work stress was impaired, (Tr. 49, 55–57); and limited Mr. Davis to work with no concentrated exposure to hazards such as unprotected heights or open machinery because of his seizure disorder, (Tr. 50). The ALJ supported his functional analysis with medical and other record evidence. Tellingly, Plaintiff failed to identify any specific functional area that the ALJ failed to address and instead relied on generalized, conclusory arguments. Thus, to the extent the ALJ's analysis is deficient in some way by, for example, not citing to the correct source, there is no per se rule for remand and such error is harmless as the ALJ went through a function-by-function analysis as required by the framework and Plaintiff failed to specify a non-harmless error. *Dowling*, 986 F.3d 377 at 387; *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result").

  ii.  *Non-Production Pace*

Relying on *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), Plaintiff argues that the ALJ's RFC lacks substantial evidence as the ALJ failed to define the term "non-production pace" which precludes judicial review. In *Thomas*, the RFC stated in part, "[s]he is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace." *Id.* at 310. The Commissioner argued that "production rate" is a common vocational limitation but the Fourth Circuit found that it is "difficult, if not impossible, for us to assess whether [its] inclusion . . . is supported by substantial evidence" without more elaboration. *Id.* at 312. The Fourth Circuit came to the same conclusion in *Perry v. Berryhill* when the ALJ "offered no

explanation of her own for what she meant when she used the phrase "non-production oriented work setting." 765 Fed. Appx. 869, 872 (4th Cir. 2019) ("[W]e do not know what the ALJ intended when she used that phrase. As a result, it is difficult, if not impossible, to evaluate."). District courts within the Fourth Circuit have found similarly. *Hernandez v. Saul*, No. 3:19-CV-337-FDW, 2020 U.S. Dist. LEXIS 105296, at *13 (W.D.N.C. June 16, 2020) (remanding where "without any explanation, the Court cannot partake in any meaningful review of the ALJ's usage of the term 'non-production work setting' and any purported limitations imposed regarding Plaintiff's moderate limitations in concentration, pace, or persistence"); *Jenkins v. Saul*, No. 5:20-CV-00117-M, 2021 U.S. Dist. LEXIS 95278, *17 (E.D.N.C. April 28, 2021), *M&R adopted by*, 2021 U.S. Dist. LEXIS 94696 (E.D.N.C. May 18, 2021) ("Because ALJ Preston did not further define non-production rate pace, a reviewing court cannot conduct a meaningful review of the phrase.").

However, as the Fourth Circuit explained in *Sizemore v. Berryhill*, when there are some additional descriptors to give meaning to the term non-production pace, the limitation is supported by substantial evidence. 878 F.3d 72, 79 (4th Cir. 2017). In *Sizemore*, the Fourth Circuit affirmed an ALJ's decision where the RFC included a limitation to "work only in a low stress setting defined as non-production jobs without any fast-paced work and with no public contact." 878 F.3d 72, 79 (4th Cir. 2017). The Fourth Circuit found the additional descriptors like "low stress" and "without any fast-paced work" explained the restriction sufficiently.

Here, the RFC limits Mr. Davis to "unskilled work of routine, repetitive nature in two-hour segments at a non-production pace meaning non-automated/non-conveyor pacing in a stable work setting." This is different from *Thomas* and *Perry* where the ALJ did not define non-production pace and akin to *Sizemore* because the ALJ defined non-production pace by including additional descriptors (e.g., non-automated/non-conveyor pacing in a stable work setting). Thus, the term

10

non-production pace as used in the RFC is supported by substantial evidence.

### iii. Mr. Davis' Limitations

Plaintiff argues that the ALJ failed to assess Mr. Davis' capacity to perform relevant functions. As support, Plaintiff cites to *Monroe*, provides a laundry list of symptoms, reasserts that Mr. Davis was hospitalized five times, states that the ALJ failed to assess whether exposure to certain working conditions should be limited due to Mr. Davis' history of seizures, and concludes that the ALJ failed to take into account drowsiness or fatigue from Mr. Davis' medications or unexcused absences due to potential hospitalizations in the future.

In *Monroe*, the Fourth Circuit held that "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). Here, the ALJ performed a function-by-function analysis as previously explained which took into account Mr. Davis' seizures as the ALJ limited the RFC to work with no concentrated exposure to hazards such as unprotected heights or open machinery. The drowsiness and fatigue were in Mr. Davis' subjective complaints which the ALJ found was not entirely consistent with the record evidence and the hospitalizations appeared to be caused by substance abuse. Mr. Davis also recovered from the hospitalizations and Plaintiff provided no evidence which tends to show that Mr. Davis would be hospitalized again in the future. Accordingly, Plaintiff failed to show inadequacies in the RFC that would frustrate judicial review and violate *Monroe*.

### C. Evaluation of Medical and Lay Opinions

Relying on *Monroe*, Plaintiff argues that the ALJ failed to adequately explain how he weighed the opinions of Dr. Ritterspach, the State agency examiners, and Ms. Davis. *Monroe v.*

11

*Colvin*, 826 F.3d 176, 191 (4th Cir. 2016). In particular, Plaintiff asserts that the ALJ failed to sufficiently specify the weight he assigned to each opinion which frustrates meaningful review. Defendant argues that the rules for evaluating medical and other opinions changed for applications filed after March 27, 2017, and, even absent the rule changes, the ALJ provided sufficient evidence to support his conclusions regarding the weight of the opinions.

In *Monroe*, which was decided before the rule changes, the Fourth Circuit held that determining that an opinion is entitled to significant weight because the "findings are supported by the objective evidence and the claimant's subjective complaints" without any explanation of the evidence or complaints prevents substantial evidence review. *Id.* at 191. However, after March 27, 2017, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, ALJs focus on the persuasiveness of the medical opinions while considering five regulatory factors. Of the five factors, an ALJ need only explain how he considered the factors of supportability and consistency. *Id.* at § 404.1520c(b)(2). ALJs are not required to consider evidence from nonmedical sources using these requirements. *Id.* at § 404.1520c(d).

Here, the ALJ determined the persuasiveness of the medical opinions in accord with the new rules by evaluating the supportability and consistency of the opinions. The ALJ found Dr. Ritterspach's medical opinion persuasive because his "opinion is consistent with mental status examination findings such as the ability to recall two of three words after a delay, inability to spell 'world' backwards, and an ability to perform simple math calculations as well as consistent with other opinion evidence in the record." (Tr. 29). Regarding the State agency reviewers, the ALJ first listed their findings—that Mr. Davis could follow short simple instructions, that Mr. Davis

12

had a history of substance abuse, and that mental status examinations were normal—and then determined their opinions were persuasive because they were supported by other evidence and opinions which found that same. (Tr. 30).

Ms. Davis is a nonmedical source and ALJs are not required to evaluate nonmedical opinions using the same standard. Nonetheless, the ALJ here explained that he found Ms. Davis' opinion unpersuasive because her lay opinion is based on casual observation rather than objective examination and "her opinion is potentially influenced by loyalties of family and certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities." (Tr. 31). The ALJ also listed inconsistencies between Ms. Davis' testimony (that Mr. Davis had lived with her since 2016) and the medical evidence (that Mr. Davis lived alone or without his mother). *Compare* (Tr. 26 (Ms. Davis testimony)), *with* (Tr. 27 (Dr. Pechal's notes state that Mr. Davis' lease was expiring and he was looking for a new place to live); Tr. 27 (VA notes state that Mr. Davis lived with a roommate and was looking for a job); Tr. 29 (hospital notes report that Mr. Davis lived by himself); Tr. 30 (Dr. Goots noted that Mr. Davis lived alone in an apartment)).

Accordingly, Plaintiff's generalized assertion that the ALJ's opinion evaluations are inadequate fail to show how the ALJ ran afoul of applicable law and resulted in harmful error. *See Lemmonds v. Berryhi*ll, No 3:16-CV-120-RLV-DCK, 2017 WL 9516603, at *5 (W.D.N.C. Feb. 21, 2017) ("Plaintiff clearly disagrees with the ALJ's decision, but fails to offer any persuasive argument or authority that the ALJ did not follow the proper legal standards and/or did not rely on substantial evidence in reaching his determination"). As the ALJ followed the new rules, explained his evaluations on opinion evidence, and built a "logical bridge from the evidence to his conclusion," the ALJ's opinion evaluations are supported by substantial evidence. *Monroe v.*

13

*Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

### D. Evaluation of VA Disability Rating

Plaintiff asserts in light of *Bird v. Commissioner*, 699 F.3d 337, 338 (4th Cir. 2012) that the ALJ improperly evaluated Mr. Davis' VA disability rating by failing to give the rating controlling weight without proper justification. Defendant argues that new regulations overrule *Bird* and that regardless of *Bird* Mr. Davis' failure to include the VA disability rating decision in the record precludes the decision's probative value.

In *Bird*, the Fourth Circuit held that the ALJ must give substantial weight to a VA disability rating unless the record before the ALJ "clearly demonstrates" that such a deviation from a finding of substantial weight is appropriate. 699 F.3d at 343–44. However, the rules changed for applications filed after March 27, 2017. As Mr. Davis' application was filed on April 16, 2018, the ALJ was not required to give the VA disability rating controlling weight. Instead, the ALJ only had to consider the evidence underlying the VA disability rating decision.

> Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. Thus, there is an incongruity between *Bird* and the new regulation. As "there is no Fourth Circuit precedent" on this issue, this Court previously determined based on *Chevron* and its progeny that the new regulation controls. *Rogers v. Commissioner*, 3:20-cv-00206-RJC-DSC, 2022 U.S. Dist. LEXIS 7077, at *6–13 (W.D.N.C. Jan. 13, 2022). Accordingly,

14

the ALJ was not required to give the VA disability rating controlling weight. Regardless, the ALJ clearly demonstrated why the VA rating was unpersuasive, stating:

> I find that the VA's 100 percent service connection is unpersuasive (Exhibit 13E). For example, treatment notes dated April 2018 revealed that the claimant is 100 percent service-connected for PTSD; however, there was no supportive explanation or evidence cited to corroborate this rating (Exhibit 2F, p. 71). Although the claimant has a diagnosis of PTSD and continues to endorse symptoms, Veterans Affairs treatment notes more consistently revealed normal mental status examinations. Although at times, the claimant experienced exacerbations of symptoms that occurred in the context of alcohol and drug use as well as medication non-compliance. As such, I find that the rating is unpersuasive.

(Tr. 55).

And even if *Bird* was controlling, it would not warrant remand. Mr. Davis failed to include a copy of his VA disability rating decision in the record, and instead relied on a numerical reference to the disability rating. (Tr. 292). As there was no copy of the decision included in the record, the ALJ was not able to identify the evidence the VA actually considered in making its decision. This precludes the probative value of the decision and negates any *Bird* issue. *Britt v. Berryhill*, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *6 (W.D.N.C. Nov. 30, 2018) ("The Court finds that the instant case does not actually present a Bird issue, as the VA disability rating decision is not contained in the record.").

### E.  Alleged Conflict between DOT and VE Testimony

Plaintiff argues that the ALJ failed to address a conflict between the DOT and the testimony of the VE. The alleged conflict is the RFC limitation of "unskilled, routine, repetitive" work. Plaintiff believes this limitation requires a reasoning level of one which would conflict with the jobs identified by the VE that all require a reasoning level of two. Defendant argues that, based on Fourth Circuit precedent, there is no conflict between "unskilled, routine, repetitive" work and a reasoning level of two.

15

The Fourth Circuit has held that remand is required when an ALJ fails to address a conflict between the DOT and the testimony of the VE. *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019). In *Thomas*, the Fourth Circuit found a conflict between a limitation to "short, simple instructions" and a reasoning level of two (which requires carrying out detailed but uninvolved instructions). *Id.* The Fourth Circuit then distinguished its ruling in *Thomas* in a precedential decision, *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019). In *Lawrence*, the Fourth Circuit held that there is no conflict between a reasoning level of two and the limitation to "simple, routine, repetitive tasks." *Id.* at 143–44. The Court explained the difference between the limitation "simple, routine, repetitive tasks" (reasoning level two) and the limitation in *Thomas* to "short, simple instructions" (reasoning level one).

> [T]he key difference is that Thomas was limited to "short" instructions. "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include. . . . There is no comparable inconsistency between [simple, routine, repetitive tasks] and Level 2 [reasoning].

*Id.*

Here, Mr. Davis had an RFC that limited him to "unskilled, routine, repetitive" work. This is akin to the limitation in *Lawrence* as unskilled and simple are equivalent under the DOT.[4] Thus, for the same reasons that the Fourth Circuit found there was no conflict in *Lawrence*, there is no conflict here. And Plaintiff's other arguments regarding unresolved conflicts as it pertains to the change house attendant and industrial cleaner positions identified by the VE amount to harmless error at most as there is no unresolved conflict for the cleaner II position.

---

[4] Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568.

16

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 14), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 18), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: March 7, 2022

Robert J. Conrad, Jr.
United States District Judge